IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

UNITED STATES OF AMERICA,

    Plaintiff,

    v.                                               Criminal Action No.: 5:18-CR-2

MARIUS A. BROWN,

    Defendant.

## REPORT AND RECOMMENDATION

**I.    INTRODUCTION**

The Defendant is a convicted felon and therefore prohibited from possessing a firearm. On January 23, 2018, the Grand Jury indicted him for one count of unlawful possession of a firearm as well as a forfeiture allegation.

The Defendant filed a Motion to Suppress Statements and a Motion to Suppress Search. The Court held a hearing regarding these motions on August 13, 2018. The Defendant appeared in person and by his counsel, John A. Schwab, Esq. The Government appeared through its counsel, Stephen L. Vogrin, Esq.

For the reasons that follow, The Court recommends that Defendant's Motions be denied.

**II.    FINDINGS OF FACT**

On October 21, 2017, police received a call about a man breaking the window of a vehicle. Officers Agostino and McKenzie of the Wheeling Police Department were the first to arrive on scene. Upon arriving on the scene, they found the woman who made the initial call, later identified as Miana McGaha, sitting in her vehicle. The vehicle had a broken out window. A man, identified as the Defendant, was outside the vehicle yelling at the woman.

1

The woman told officers that Defendant had broken the window with a firearm. The woman also claimed that Defendant had struck her in the back of the head as she tried to leave his residence after retrieving some personal belongings of hers which she had left there. She stated she had been in a relationship with the Defendant but that he had kicked her out a few days prior after an argument. She stated that she believed Defendant had taken the firearm into the residence just before officers arrived on the scene. Upon making contact with Defendant, officers observed that he was bleeding profusely from his hand and was emotional. Once accusations of domestic violence were made by the woman, Defendant was taken into custody.

While Officer McKenzie took Defendant to the hospital for treatment on his hand, Officer Agostino met with a magistrate to obtain a search warrant to search Defendant's residence for the firearm in question. An affidavit was presented to the magistrate detailing the claims made by the woman. The magistrate issued the search warrant. After clearance by the hospital, Defendant was taken to the Northern Regional Jail. Execution of the search warrant resulted in officers finding a gun with what appeared to be blood on it, ammunition, and various drugs along with drug paraphernalia.

In early November of 2017, ATF Agent Heather Kozik was contacted by Wheeling Police about the Defendant and began an investigation into a possible firearm violation because, as she confirmed through her investigation, the Defendant was a convicted felon who was prohibited from owning or possessing a firearm.

On November 24, 2017, Agent Kozik along with ATF Agent Travis Campbell went to Northern Regional Jail. While there, they spoke with Defendant, who made incriminating statements with respect to his ownership and possession of the firearm.

III.     DISCUSSION

    A.     **Defendant's Motion to Suppress Search**

The Defendant argues that the search warrant obtained prior to his residence being searched was invalid, rendering the search a violation of his Fourth Amendment protection against unreasonable search and seizure. It is undisputed that Defendant had an expectation of privacy in his residence and that he did not consent to a search. Therefore, the only issue is whether the search warrant was valid.

The Defendant argues that the magistrate did not have the requisite probable cause needed to issue the warrant. Probable cause is not subject to a precise definition. *United States v. Richardson*, 607 F.3d 357, 369 (4th Cir. 2010). That being said, probable cause has been said to exist by the Supreme Court "where the known facts and circumstances are sufficient to warrant a [person] of reasonable prudence in the belief that contraband or evidence of a crime will be found." *Ornelas v. United States*, 517 U.S. 690, 696, 116 S.Ct. 1657 (1996). In determining whether probable cause is present, a magistrate should make "a practical, commonsense decision whether, given all the circumstances set forth in the affidavit . . . there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Illinois v. Gates*, 462 U.S. 213, 238, 103 S.Ct. 2317 (1983), *United States v. Allen*, 631 F.3d 164, 172 (4th Cir. 2011).

Here, there was ample information in the affidavit provided to the magistrate to support a finding that probable cause existed that a search of Defendant's residence would produce evidence of a crime. The affidavit states that officers responded to Defendant's residence in response to a 911 call in which a woman said that a man, who turned out to be the Defendant, broke her vehicle's window out with a gun. When officers arrived on the scene, they observed

the broken window. The woman told officers that Defendant struck her in the back of the head as she tried to leave the residence. She also told officers that she believed that Defendant had taken the gun inside the residence before police arrived. Officers observed Defendant to be bleeding profusely from his hand. The Court believes this is enough to establish probable cause, even without the magistrate asking additional questions or gathering additional information.

Furthermore, even if the Court were to find that probable cause did not exist for the magistrate to issue a search warrant, the search would still be valid under the *Leon* good faith exception. In *Leon*, the Supreme Court held that in situations where a warrant issued by a judicial officer is found after the fact to be deficient, the evidence obtained as a result of the search warrant is still admissible if the police officers acted in good faith. *United States v. Leon*, 468 U.S. 897, 923, 104 S.Ct. 3405 (1984). Normally, a search warrant issued by a judicial officer is sufficient to show that a police officer acted in good faith. *Id*. at 922. *Leon* identifies four circumstances in which an officer who relies on a warrant in conducting a search is not covered under the *Leon* good faith exception. *Id.* They are: (1) when the judicial officer issuing the warrant was misled by information in the affidavit that the affiant knew to be false or would have known to be false absent reckless disregard for the truth; (2) the judicial officer wholly abandoned his role as a neutral and detached party; (3) when the affidavit is so lacking in probable cause that belief in its existence is entirely unreasonable; or (4) when the warrant is so facially deficient that the law enforcement officer executing it cannot reasonably have assumed its validity. *Id*. at 923, *United States v. Perez*, 393 F.3d 457, 461 (4th Cir. 2004).

There was simply no evidence to establish that any of these circumstances existed. No evidence was presented showing that Officer Agostino misled the magistrate, either intentionally or unintentionally, or recklessly disregarded the truth. No evidence showed that the magistrate

wholly abandon his role because the affidavit contained probable cause and the magistrate acted reasonably in issuing the warrant, which also addresses the third and fourth exceptions to the *Leon* good faith exception. Accordingly, even if evidence was presented to support Defendant's argument that the magistrate abandoned his judicial role by failing to be neutral and detached and that the warrant was so facially deficient that the officers executing it could not have reasonably presumed it to be valid, the exclusionary rule would not apply to the instant case.

The Defendant also makes an argument pertaining to an alleged failure of the officer and magistrate to establish the veracity of Ms. McGaha's statements to officers. ECF No. 36 at 7. Because this argument is premised on Ms. McGaha being an informant, the Court need not discuss this argument in detail. The uncontroverted testimony was that Ms. McGaha was a suspected victim of a crime, likely multiple crimes, and not an informant.

Because of the foregoing, the Court is not persuaded by Defendant's arguments and recommends that Defendant's Motion to Suppress Search be denied.

### B.     Defendant's Motion to Suppress Statements

The Defendant also argues that statements made by him to ATF agents while incarcerated at Northern Regional Jail were taken in violation of his Fifth Amendment right against self-incrimination and Sixth Amendment right to counsel. ECF No. 35.

When a subject is interrogated while in custody, a *Miranda* warning is required. *Miranda v. Arizona*, 384 U.S. 436, 444 (1966). A court's "inquiry into whether an individual waived effectuation of the rights conveyed in the *Miranda* warnings has two distinct dimensions." *United States v. Cristobal*, 293 F.3d 134, 139 (4th Cir. 2002). Under *Christobal*, a waiver of a suspect's *Miranda* warnings "must have been voluntary in the sense that it was the product of free and deliberate choice rather than intimidation, coercion, or deception." *Id.* (quotation marks

omitted). Next, "the waiver must have been made with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it." *Id.* (quotation marks omitted). "In short, a waiver of Miranda rights must be voluntary, knowing, and intelligent." *United States v. Simmons*, 526 F. Supp. 2d 557, 564 (E.D.N.C. 2007). Under the preponderance of the evidence, the Government has the burden to show that Dubrowski waived his *Miranda* rights. *United States v. Robinson*, 404 F.3d 850, 860 (4th Cir. 2005).

The Government must show, by a preponderance of the evidence, that Defendant voluntarily, knowingly, and intelligently waived his right not to speak with the Agents Kozik and Campbell. Defendant signed a waiver acknowledging that his rights had been read to him and that he understood them. Agent Kozik testified that she read them verbatim to Defendant, and Agent Campbell also testified Defendant was read his rights and voluntarily waived them. Defendant testified that he signed the waiver at the end of the conversation rather than the beginning and did not understand what he was signing. He also claimed multiple times during his testimony that he never speaks to law enforcement. Yet, he never denied speaking with them on this occasion and he never denied making the incriminating statements at issue. Also, Defendant has demonstrated throughout these proceedings that he has at least a base understanding of the legal system; certainly enough to know when he's signing a waiver of his *Miranda* rights that it is not a meaningless form. Indeed, the signed waiver speaks for itself. Therefore, the Court finds that the Government showed by a preponderance of the evidence that Defendant voluntarily, knowingly, and intelligently waived his right to remain silent before speaking with ATF agents on November 24, 2017.

Defendant argues that the statements taken were also in violation of his Sixth Amendment right to counsel. The Sixth Amendment provides that all individuals accused in

criminal prosecutions have the right to counsel to assist in their defense. U.S. Const. amend. VI. However, the right "attaches only after the commencement of formal charges against a defendant." *United States v. Alvarado*, 440 F.3d 191, 196 (4th Cir. 2006), see also *Moran v. Burbine*, 475 U.S. 412, 431, 106 S.Ct. 1135 (1986).

Although there is a circuit split on the issue, the law of the Fourth Circuit establishes that "[s]ince they arise from separate sovereigns, state and federal offenses are not the same for purposes of the Sixth Amendment right to counsel." *Id*. Although Defendant had been charged with being a felon in possession at the state level at the time he spoke with the Agents, no federal charges had been against him. Therefore, the notion that the right to counsel applies to charges which are not brought until later if the offenses are the same is not applicable here. Since Defendant had not been charged with any crime federally at the time the statements were made to federal law enforcement officers who were investigating the situation as a precursor to potentially bringing federal charges against the Defendant, his Sixth Amendment right of counsel had not yet attached.

Because of the foregoing, the Court is nrecommends that Defendant's Motion to Suppress Statements be denied.

IV.     **RECOMMENDATION**

The Court **RECOMMENDS** that the Defendant's [ECF No. 35] Motion to Suppress Statements and [ECF No. 36] Motion to Suppress Search be **DENIED**.

Any party who appears *pro se* and any counsel of record, as applicable, may, within fourteen days after being served with a copy of this Report and Recommendation, file with the Clerk of the Court written objections identifying the portions of the Report and Recommendation to which objection is made, and the basis for such objection.

A copy of such objections should be submitted to the District Court Judge of Record. Failure to timely file objections to the Report and Recommendation set forth above will result in waiver of the right to appeal from a judgment of this Court based upon such Report and Recommendation. 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985): *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).

The Clerk of the Court is **DIRECTED** to provide a copy of this Report and Recommendation to parties who appear *pro se* and all counsel of record, as applicable, as provided in the Administrative Procedures for Electronic Case Filing in the United States District Court for the Northern District of West Virginia.

Dated: August 20, 2018               /s/ *James E. Seibert*
                                     JAMES E. SEIBERT
                                     UNITED STATES MAGISTRATE JUDGE